IN THE UNITED STATES DISTR ICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ERIC WILSON, :
    Plaintiff, :
     :
v. : CIVL ACTION NO. 19-CV-5015
     :
SUPERINTENDENT JOHN DOE :
GEORGE W. HILL CORRECTIONAL :
FACILITY - DELAWARE CO., *et al.* :
    Defendants. :

**MEMORANDUM OPINION**

On October 25, 2019, *pro se* Plaintiff Eric Wilson filed a Complaint pursuant to 42 U.S.C. § 1983 against numerous individuals.[1] By Memorandum and Order dated December 16, 2019, the Court granted Wilson leave to proceed *in forma pauperis*, and dismissed his Complaint in its entirety for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Specifically, Defendants (1) Insurance Co. - John Doe, (2) Taylor Hospital - Medical Dept. - John Doe and or Jane Doe, and (3) Qawi Wilson were dismissed with prejudice, and all other Defendants were dismissed without prejudice. Wilson was granted leave to file an amended complaint as to any Defendant who was not dismissed with prejudice. To the extent he planned to file an amended complaint, Wilson was directed to be mindful of the Court's reasons for dismissal of the claims in his initial Complaint, which were fully explained in the Court's Memorandum.

On January 17, 2020, Wilson filed his Amended Complaint pursuant to 42 U.S.C. § 1983. In so doing, Wilson renamed all of the Defendants who were named in his initial Complaint, including those that were previously dismissed with prejudice by the Court. In fact, it appears to

---

[1] When Wilson filed this matter, he was confined at the George W. Hill Correctional Facility awaiting trial. Currently, Wilson is incarcerated at SCI-Houtzdale, having been convicted of certain offenses, including a conspiracy drug offense, on August 27, 2019. *See Commonwealth v. Wilson*, No. CP-23-CR-0004046-2018 (C.P. Del. Cty.).

the Court that Wilson refiled his initial Complaint in its entirety but added a handwritten notation of "Amended" to the first page of the document and two additional pages of written material.

I. BACKGROUND

The Amended Complaint avers that Wilson was a passenger in a vehicle, a white Lincoln Town Car, being driven by his sibling, Qawi Wilson, on October 25, 2017. On that day, Chester City police officers and Pennsylvania state troopers were "working a detail called 'Operation Triggerlock' in Chester, PA under the supervision [and] advisory of Thaddeus Kirkland." According to the Amended Complaint, Trooper McIlvaine noticed that the vehicle in which Wilson was a passenger had "an obscured Delaware temporary tag and a plastic cover over the registration tag" so he "made a U-turn and initiated his siren" attempting to pull over the vehicle. Wilson avers that his sibling "began traveling at high rates of speed as the police gave chase" and that Trooper McIlvaine used a "tacticle pit-maneuver" to stop the fleeing vehicle. Wilson avers that prior to the pit maneuver, his sibling and the police were traveling at rates of speed between 50 and 60 miles per hour in areas where the speed limit ranged from 25 to 35 miles per hour. Wilson avers that when Trooper McIlvaine utilized the pit maneuver, it caused him to be thrown from the front passenger seat into the front passenger door of the vehicle and he instantly incurred injuries to his right shoulder, neck, back and right foot. Trooper McIlvaine "ended up totaling his vehicle" and was unable to continue pursuit.

Trooper Clemons continued pursuit of the vehicle, and Qawi Wilson eventually stopped the vehicle in a yard. Wilson avers that "the trooper jumped the curb going like 60 mph [and] rammed the vehicle into the back of the Lincoln town car knocking the bumper of the car and collapsing the trunk." Wilson avers that he saw the car coming at a high speed and "he jumped out prior to the last collision." Officer Duncan and Trooper Clemons "exited their vehicle

2

pointing weapons and telling [Wilson] if [he] moved they would shoot." Wilson asserts that because he feared for his life, he "ran and jumped a fence to [his] yard with the intentions of making it to [his] mother." He was "apprehended on [his] roof by Officer Duncan and Trooper Clemons [at] gunpoint." "After being arrested [Wilson] was told by the officers that [he] was lucky that they didn't kill [him]."

Following his arrest, Wilson was taken to the "Chester Police Dept. where [he] immediately requested medical treatment." Wilson was then transported to Taylor Hospital by Trooper Clemons and Officer Duncan. Wilson "was seen by a doctor/nurse" and "informed her that [he] wanted a[n] MRI or Catscan due to [his] back not feeling normal." Wilson claims she disregarded his request, performed an x-ray, and told the officers that he was fine. Wilson asserts this was a "misdiagnosis" and he did not receive adequate medical care.

Following his transfer to Delaware County prison,[2] Wilson was "forced in a cell with 15-20 people where [he] had to lay on the floor making [his] injuries worse." Wilson "was forced to be on the top bunk and [at] some point in either November or the end of October [he] fell off the top bunk and was escorted to medical on a stretcher." Wilson asserts that he was in serious need of medical attention and was forced to file grievances in order to receive medical care. He avers a delay in medical attention, stating that he was examined and x-rayed on November 4, 2017, and prescribed pain medication on November 6, 2017. Wilson contends that the actions of the medical department amount to "pure negligence and deliberate indifference" and the medical department "claimed they were following policy which is why the superintendent should be held accountable." Wilson contends that the injuries he sustained "are severe in nature and he continues to suffer from such injuries."

---

[2] The Delaware County prison and George W. Hill Correctional Facility are one and the same.

> In his Amended Complaint, Wilson avers as follows:
>
> Each of the Defendants, contained herein and enumerated within said complaint, has exercised a Deliberate Indifference to [his] safety/health and or mental health, instilled such callous disregard to and/or for the value of human life. Each of the Police Officers, State Troopers, Taylor Hospital Personnel, Delaware County Prison Personnel, have violated Policy/Protocol/procedure/Code of Ethics and/or Laws of the Commonwealth, in that they have engaged in unethical, impermissible, prejudicial conduct/misconduct in violation of [his] 8th and 14th Amendment Constitutional Rights of the United States Constitution. The Insurance Company(s) – John Doe are liable for [his] injuries adjacent to the Insurance Policy (Holders).

Wilson asserts claims for inadequate medical care against "Delaware County Prison Medical and Taylor Hospital Personnel" and asserts claims based on a supervisory liability theory against "Superintendent John Doe of Delaware County Prison . . . Secretary for the Department of Corrections for Delaware County . . .[and] Mayor Thadeus Kirkland, employer of personnel/public servants and or officers of the City of Chester." Wilson asserts violations of the Eight and Fourteenth Amendments against "[e]ach of the Defendant Police Officers and State Troopers" for "deliberate indifference to [his] health/safety to where they have breached their duty to protect as the defendants engaged in a high speed chase of [his] sibling." Wilson seeks money damages.

## II.    STANDARD OF REVIEW

Because Wilson is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) applies. This requires the Court to dismiss the Amended Complaint if it fails to state a claim. Whether the Amended Complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal

quotations omitted). Conclusory allegations do not suffice. *Id.* As Wilson is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "A defendant in a civil rights action must have personal involvement in the alleged wrongs." *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (explaining that the personal involvement of each defendant in the alleged constitutional violation is a required element and a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims). Indeed, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

### A. Supervisory Liability – Superintendent John Doe, Mayor Kirkland, and Secretary for the Department of Corrections

As he did in his initial Complaint, Wilson seeks to assert claims in his Amended Complaint based on a supervisory liability theory against Defendants "Superintendent John Doe George W. Hill Correctional Facility," "City of Chester, Pennsylvania - Mayor Thadeus Kirkland," and "Secretary for the Dept. of Corrections for Delaware County Pennsylvania." The added factual allegations in the Amended Complaint against these supervisory individuals are as follows:

- Chester City officers and Pennsylvania State Trooper were working a detail in Chester, Pennsylvania on October 25, 2017 "under the supervisory [and] advisory of Thaddeus Kirkland."

5

- "This is pure negligence and a deliberate indifference by the medical dept. who claimed they were following policy which is why the superintendent should be held accountable."

There are no new factual allegations in the Amended Complaint that reference the Secretary for the Department of Corrections. For the reasons already explained in the Court's prior memorandum, Wilson's claims against these supervisory defendants fail. *See Wilson v. Doe*, 2019 WL 6884665, at *2 (E.D. Pa. Dec. 16, 2019).

As this Court has previously noted, there are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 135 S. Ct. 2042 (2015). First, a supervisor may be liable if he or she "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.*

Wilson's claims against these supervisory defendants are based on entirely conclusory phrases which indicate his belief that his constitutional rights were violated. Because Wilson does not explicitly identify the policy, practice or custom which allegedly caused him harm, and he fails to specifically allege how each supervisory defendant was involved in the alleged deprivation of his rights, his claims must be dismissed for a second time. Wilson does not explicitly allege the basis for a supervisory liability claim against Superintendent John Doe, Mayor Kirkland, or the Secretary for the Department of Corrections. As the Court has already

permitted Wilson the opportunity to cure the defects previously identified in these claims, and as he has failed to do so, these claims are dismissed with prejudice because it appears that further attempts at amendment would be futile.[3] *See Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000) (recognizing that a district court may deny leave to amend if amendment would be futile).

### B. Insurance Co. John Doe, John Doe and/or Jane Doe at Taylor Hospital, and Qawi Wilson

In his amended Complaint, Wilson has reasserted the same federal constitutional claims against Defendants John Doe at Insurance Co., John Doe and/or Jane Doe at the Taylor Hospital Medical Department, and Qawi Wilson. For the reasons already explained in the Court's prior memorandum, these claims were dismissed with prejudice pursuant to § 1915(e)(2)(B) because § 1983 claims against these non-state actors are not plausible. *Wilson*, 2019 WL 6884665, at *2.

As this Court previously noted, Section 1983 requires that an individual acting under color of state law engaged in the conduct allegedly violative of the Constitution. *See id.* The allegations in the Amended Complaint are clear that John Doe at Insurance Co., John Doe and/or Jane Doe at the Taylor Hospital Medical Department, and Qawi Wilson are private citizens, not state actors. Whether a defendant is acting under color of state law — *i.e.,* whether the defendant is a state actor —depends on whether there is "such a close nexus between the State and the challenged action' that seemingly private behavior may be fairly treated as that of the State itself." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted). "To

---

[3] To the extent Wilson's claims could be construed as having been raised against either Delaware County or the City of Chester, he has not alleged a municipal policy or custom with the requisite specificity to state a plausible claim against those entities. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978) (to state a basis for municipal liability, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights); *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009) ("To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was.").

answer that question, [the Third Circuit has] outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists:

> (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity.

*Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotations and alteration omitted). There is no basis alleged in Wilson's Amended Complaint to determine that these Defendants are state actors. Accordingly, the federal constitutional claims asserted against them must be dismissed with prejudice for a second time.

### C. State Trooper Cobbold and Chester City Officers Jackson and Ticknor

As in the initial Complaint, Wilson's Amended Complaint does not attribute any conduct to these individually named defendants. Even construing Wilson's Amended Complaint liberally, these pleading deficiencies make it challenging to screen the Amended Complaint and would make it difficult for a defendant to meaningfully respond to the pleading. *See Lawal v. McDonald*, 546 F. App' x 107, 113 (3d Cir. 2014) (finding that pleading relying on "repeated and collective use of the word 'Defendants'" was ambiguous about each Defendant's role in the events giving rise to plaintiff's claims). There are no specific actions (or inactions) attributable to any of these defendant officers.

In a Section 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *Rode*, 845 F.2d at 1207; *see also Iqbal*, 556 U.S. at 676 (explaining that " [b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant,

through the official's own individual actions, has violated the Constitution."). Wilson has made no allegations describing how any of these individual officers were personally responsible for any alleged constitutional violations. Thus, the allegations are insufficient to put them on notice to prepare a defense, and the Amended Complaint does not ensure that the Court is sufficiently informed of the facts to determine the relevant legal issues as to these named Defendants. As the Court has already permitted Wilson the opportunity to cure the defects previously identified with respect to these officers, and as he has failed to do so, and it appears that further attempts at amendment would be futile. *See Jones v. Unknown D.O.C. Bus Driver & Transportation Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (amendment by *pro se* prisoner would be futile when prisoner "already had two chances to tell his story"). Accordingly, any claims against these officers will be dismissed with prejudice.

### D. State Troopers McIlvaine and Clemons and Chester City Officer Duncan

#### i. *Police Pursuit – Troopers McIlvaine and Clemons*

Wilson is attempting to bring claims against Troopers McIlvaine and Clemons based on injuries he allegedly sustained during the police pursuit of his brother, Qawi Wilson. Specifically, Wilson avers when Trooper McIlvaine utilized the pit maneuver in an attempt to stop the fleeing vehicle, it caused him to be thrown from the front passenger seat into the front passenger door of the vehicle and he instantly incurred injuries to his right shoulder, neck, back and right foot. When Trooper McIlvaine was no longer able to continue pursuit, Trooper Clemons pursued the vehicle, and Wilson avers that the Trooper "jumped the curb going like 60 mph [and] rammed the vehicle into the back of the Lincoln town car knocking the bumper of the car and collapsing the trunk."

"[A] police pursuit in attempting to seize a person does not amount to a 'seizure' within the meaning of the Fourth Amendment." *See Cobb-Leavy v. Borough of Yeadon*, 2018 WL 4252385, at *2 (E.D. Pa. Sept. 5, 2018) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998). "A person is seized for Fourth Amendment purposes only if he is detained by means intentionally applied to terminate his freedom of movement." *Berg v. Cty. of Allegheny*, 219 F.3d 261, 269 (3d Cir. 2000); *Davis v. Twp. of Hillside*, 190 F.3d 167, 169 n.1 (3d Cir. 1999). Accordingly, passengers, such as Wilson, must look to substantive due process, not the Fourth Amendment,[4] for constitutional protection. *Lewis*, 523 U.S. at 844 (analyzing the claim of injury to bystander as part of police pursuit under substantive due process).

To establish a substantive due process violation, Wilson must demonstrate that the conduct of the officers was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Lewis*, 523 U.S. at 847 n.8, *abrogated on other grounds by Saucier v. Katz*, 533 U.S. 194 (2001). In the case of a justifiable high-speed chase, because of the split-second decisions involved, a police officer's conduct cannot shock the conscience absent an "intent to harm suspects physically or to worsen their legal plight." *Lewis*, 523 U.S. at 854; *see also Davis*, 190 F.3d at 170 n.2 (noting that under *Lewis*, "if a police officer is justified in giving chase, that justification insulates the officer from constitutional attack, irrespective of who might be harmed or killed as a consequence of the chase").

In *Davis*, the United States Court of Appeals for the Third Circuit upheld the denial of a substantive due process claim brought by an innocent bystander injured during a police vehicular pursuit. Similar to the alleged facts here, the vehicular pursuit occurred when police attempted

---

[4] Once his brother decided to flee, Wilson was not subject to seizure under the Fourth Amendment or afforded its protections. *See Stewart v. Trask*, 2003 WL 21500018, at *8 n.5 (E.D. Pa. June 27, 2003) (citing *California v. Hodari D.*, 499 U.S. 621, 624 (1991)).

10

to pull over the driver of a vehicle, but the driver refused to stop the vehicle, resulting in the pursuit. *Davis*, 190 F.3d at 169. The pursuit ended when an officer utilized a "bump procedure" by intentionally hitting the rear of the driver's vehicle with his police cruiser, causing the driver to hit his head on the steering wheel and pass out, which in turn caused the driver's vehicle to spin out of control and hit two other vehicles, one of which hit the plaintiff Davis. *Id.* The Third Circuit explained:

> as in *Lewis*, the officers were faced with lawless behavior – the flight from their investigation – for which they were not to blame. They had done nothing to cause [the motorcycle driver]'s high-speed driving or his flouting of their law-enforcement authority. [The motorcycle driver]'s action was instantaneous and so, by necessity, was the officers' response. Their intent was to do their job as law enforcement officers, not to cause injury. If they acted recklessly or imprudently, there is no evidence that their actions were tainted by an improper or malicious motive.

*Id.* at 171 (internal citations omitted).

In light of the foregoing cases, the Court notes that at the time of the police pursuit in this matter, the state of the law was such that police officers may have understood they could be exposed to constitutional liability for actions taken during a police pursuit only when they had an intent to harm. In 2018, however, the United States Court of Appeals for the Third Circuit decided *Sauers v. Borough of Nesquehoning*, 905 F.3d 711, 722 (3d Cir. 2018), which changed the standard for police pursuit cases in non-emergency contexts by stating as follows:

> Although the state of the law in May 2014 was unsettled as to whether police officers engaged in a police pursuit could be subject to constitutional liability for a level of culpability less than an intent to harm, our opinion today should resolve any ambiguity in that regard within this Circuit. Police officers now have fair warning that their conduct when engaged in a high-speed pursuit will be subject to the full body of our state-created danger case law. That law clearly establishes that the level of culpability required to shock the conscience exists on a spectrum tied to the amount of time a government official has to act. In the police pursuit context, it is also necessary to take into consideration the officer's justification for engaging in the pursuit. We recognize that most high-speed police pursuits arise when officers are responding to emergencies or when they must make split-second

11

decisions to pursue fleeing suspects. Our holding today does nothing to alter the longstanding principle that, in such cases, constitutional liability cannot exist absent an intent to harm. But when there is no compelling justification for an officer to engage in a high-speed pursuit and an officer has time to consider whether to engage in such inherently risky behavior, constitutional liability can arise when the officer proceeds to operate his vehicle in a manner that demonstrates a conscious disregard of a great risk of serious harm.

*Sauers*, 905 F.3d at 711. At this early stage of the litigation and viewing the allegations in the light most favorable to Wilson, assuming he sustained injuries as police pursued his brother's vehicle, Wilson will be permitted to proceed on his claims.

### ii. Arrest at Gunpoint – Trooper Clemons and Officer Duncan

Wilson will also be permitted to proceed on his excessive force claims against Officer Duncan and Trooper Clemons at this time. Specifically, Wilson avers that once the vehicular pursuit ended, Officer Duncan and Trooper Clemons "exited their vehicle pointing weapons and telling [Wilson] if [he] moved they would shoot." Wilson asserts that because he feared for his life, he "ran and jumped a fence to [his] yard with the intentions of making it to [his] mother." He was "apprehended on [his] roof by Officer Duncan and Trooper Clemons [at] gunpoint." "After being arrested [Wilson] was told by the officers that [he] was lucky that they didn't kill [him]."

Taking these allegations as true, Wilson may proceed on his excessive force claims against Officer Duncan and Trooper Clemons. In deciding whether challenged conduct constitutes excessive force, a court must determine the objective "reasonableness" of the challenged conduct, considering "'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Couden v. Duffy*, 446 F.3d 483, 496-97 (3d Cir. 2006) (citing *Carswell v. Borough of Homestead*, 381 F.3d 235, 240 (3d Cir.2004) (quoting *Graham v.*

*Connor*, 490 U.S. 386, 396 (1989)). Other factors include "the duration of the [officer's] action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997). In evaluating reasonableness, the court must take into consideration the fact that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 397. Thus, the court should not apply "the 20/20 vision of hindsight," but should instead consider the "perspective of a reasonable officer on the scene." *Id.* at 396. Given the fact-specific nature of this inquiry, Wilson will be permitted to proceed on his claims at this early stage of the litigation.

### E. John Doe and/or Jane Doe at George W. Hill Correctional Facility Medical Department

Wilson asserts that, upon arrival to the George W. Hill Correctional Facility, he was "forced in a cell with 15-20 people where [he] had to lay on the floor making [his] injuries worse." He avers that he "was forced to be on the top bunk and [at] some point in either November or the end of October [he] fell off the top bunk and was escorted to medical on a stretcher." Wilson asserts he was forced to file grievances in order to receive medical care, resulting in a delay of medical attention, stating that he was examined and x-rayed on November 4, 2017, and prescribed pain medication on November 6, 2017.

#### i. *Conditions of Confinement – Overcrowding*

The Eighth Amendment governs claims brought by convicted inmates challenging their conditions of confinement, while the Due Process Clause of the Fourteenth Amendment governs claims brought by pretrial detainees. *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). When Wilson filed this civil action, he was confined at the George W. Hill Correctional Facility

13

awaiting trial. Currently, Wilson is incarcerated at SCI-Phoenix, having been convicted of certain offenses, including a conspiracy drug offense, on August 27, 2019. *See Commonwealth v. Wilson*, No. CP-23-CR-0004046-2018 (C.P. Del. Cty.). Because the events giving rise to Wilson's claims occurred while he was incarcerated at the George W. Hill Correctional Facility awaiting trial, the Court will analyze his claim under the Fourteenth Amendment.

Pretrial detainees are protected from "punishment" by the Due Process Clause of the Fourteenth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Unconstitutional punishment, be it under the Eighth Amendment applicable to convicted prisoners or the Fourteenth Amendment applicable to pretrial detainees, typically includes both objective and subjective components. *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). The objective component requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]" *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Bell*, 441 U.S. at 538-39, 539 n.20). In general, a detainee must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. *See Wilson v. Seiter*, 501 U.S. 295, 298-99 (1991); *see also Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) (per curiam) ("'[T]he official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference.'") (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)); *cf. Edwards v. Northampton Cty.*, 663 F. App'x 132, 135 (3d Cir. 2016) (per curiam) ("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees." (internal citations omitted)).

The overcrowded conditions Wilson describes are generally insufficient to state a plausible constitutional violation. *See Hubbard*, 538 F.3d at 236 n.6 (pretrial detainees do not have a right "to be free from triple-celling or from sleeping on a mattress placed on the floor."); *North v. White*, 152 F. App'x 111, 113 (3d Cir. 2005) (per curiam) ("Double or triple-bunking of cells, alone, is not per se unconstitutional."). Wilson has not stated a plausible constitutional violation because he has not alleged that the overcrowded conditions amounted to punishment, deprived him of a basic need, or otherwise caused him objective harm. *See Seiter*, 501 U.S. at 305 ("Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists."); *Bell*, 441 U.S. at 542-43 (double-bunking did not violate constitutional rights of pretrial detainees when detainees had sufficient space for sleeping and use of common areas, and the average length of incarceration was 60 days); *Lindsey v. Shaffer*, 411 F. App'x 466, 468 (3d Cir. 2011) (per curiam) ("The critical issue for Eighth Amendment purposes [governing convicted prisoners] is not the number of prisoners who share facilities; rather, it is whether the alleged overcrowding has somehow harmed the prisoner."); *Hubbard*, 538 F.3d at 232-35 (triple-celling of pretrial detainees, some of whom were made to sleep on floor mattresses for three to seven months, and housing of detainees in gym, weight room, and receiving area due to overcrowding, did not amount to punishment); *see also Walker v. George W. Hill Corr.*, 2018 WL 3430678, at *3 (E.D. Pa. July 13, 2018) (concluding that prisoner plaintiff's claims that "he was forced to share a cell with two other individuals and that he was forced to sleep on the floor inside what was described as a boat unit" and that "his sleeping area was a very unhealthy and unsanitary space two feet from the toilet bowl" failed to state a Fourteenth Amendment claim with respect to allegations of overcrowding). He has also failed to allege how the John and Jane Doe Defendants in the

15

George W. Hill Medical Department, or any other Defendant, are responsible for the challenged conditions. For those reasons, Wilson's claims based on the conditions of confinement are not plausible.

### ii. *Deliberate Indifference – Failure to Provide Medical Treatment*

To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.[5] *See Farmer*, 511 U.S. at 835. A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Bearam v. Wigen*, 542 F. App'x 91, 92 (3d Cir. 2013) (per curiam) (quoting *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)); *see also Montgomery v. Aparatis Dist. Co.*, 607 F. App'x 184, 187 (3d Cir. 2015) (per curiam) ("Delay or denial of medical care violates the Eighth Amendment where

---

[5] The standard under the Eighth Amendment and Fourteenth Amendment for claims related to a prisoner's medical needs is essentially the same for purposes of the analysis. *See Parkell v. Morgan*, 682 F. App'x 155, 159 (3d Cir. 2017) (per curiam); *see also Moore v. Luffey*, 2019 WL 1766047, at *3 n.2 (3d Cir. Apr. 19, 2019) (declining to address whether a new standard applies to claims raised by pretrial detainees based on issues related to medical care).

defendants are deliberately indifferent to a prisoner's serious medical need."). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). Furthermore, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode*, 845 F.2d at 1207.

Wilson has not stated a plausible claim against John and/or Jane Doe. Notably, Wilson's allegations, although sparse, demonstrate that he received medical treatment for his alleged injuries, including x-rays and pain medication. While Wilson may have disagreed with the extent or amount of treatment received, he has not alleged enough facts from which one could plausibly infer that he had a serious medical need that was regarded with deliberate indifference. Additionally, although Wilson indicates that he required a bottom bunk for a medical need, he does not describe the nature of that medical need or why the need required a bottom bunk accommodation. Accordingly, the Court will dismiss Wilson's claims against "John and/or Jane Doe."

### iii. *Grievances*

Moreover, to the extent that Wilson alleges a violation of his rights with respect to the filing of grievances, this Court notes that claims based on the handling of prison grievances fail because "[p]rison inmates do not have a constitutionally protected right to a grievance process." *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (per curiam); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (per curiam). Accordingly, any facts alleged by Wilson about grievances do not give rise to a plausible basis for a constitutional claim and will be dismissed with prejudice.

## IV.	CONCLUSION

For the foregoing reasons, the Court will dismiss Wilson's claims against Superintendent John Doe, Mayor Kirkland, Secretary for the Department of Corrections, Insurance Co. John Doe, John Doe and/or Jane Doe at Taylor Hospital, Qawi Wilson, Trooper Cobbold, Officer Jackson, Officer Ticknor, and John Doe and/or Jane Doe at George W. Hill Correctional Facility Medical Department. Wilson will be permitted to proceed against Trooper McIlvaine, Trooper Clemons, and Officer Duncan on his excessive force claims related to the police chase and the arrest at gunpoint.

An appropriate Order follows.

**April 8, 2020**	**BY THE COURT:**

**/s/ Wendy Beetlestone, J.**
_____
**WENDY BEETLESTONE, J.**